

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRADLEY S. WALKER, M.D,

    Plaintiff,

v.

CLARK COUNTY, a political subdivision, and municipality including its department UNIVERSITY MEDICAL CENTER,

    Defendant.

2:07-cv-1528-RCJ-GWF

**ORDER**

Currently before the Court is Defendant Clark County's ("Clark County") Motion for Summary Judgment (#113) filed on July 29, 2010. Plaintiff Bradley S. Walker, M.D. ("Plaintiff") filed an Opposition (#127) on September 13, 2010, and Defendant filed a Reply (#129) on October 7, 2010.[1]

The Court heard oral argument on the motion on November 26, 2010.

## BACKGROUND

Plaintiff filed a Complaint in this matter on February 16, 2007, following his termination from the University Medical Center ("UMC") in Las Vegas, Nevada. Plaintiff argues that his termination was wrongful and violated the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, the First Amendment, as well as various state laws. (Am. Compl. (#20) at pp. 19-28). Clark County moves the Court for summary judgment on the grounds that its employment decision to terminate Plaintiff was based on a legitimate non-discriminatory reason and that Plaintiff has provided no evidence to support any of his theories

---

[1] Defendant also filed an Emergency Motion for Extension of Due Date for Reply for Summary Judgment (#128) on September 27, 2010. That motion is GRANTED.

of wrongful termination.

Plaintiff was first employed at UMC in 1995. (Decl. of Bradley S. Walker, M.D. ("Walker Decl." attached as Ex. 1 to Pl.'s Opp. to Mot. for Summary Judgment (#127) at ¶ 1). According to Plaintiff, he was a "distinguished physician" at UMC during the term of his employment and had very good evaluations during that time period. Id. at ¶¶ 3-4. Plaintiff is board-certified in family medicine, public health, and occupational medicine. Id. at ¶ 6. He has worked "4000 hours in emergency rooms, 20,000 hours in urgent care, and 10,000 hours in primary care over [the course of his] professional career." Id. at ¶ 7. According to his affidavit, Plaintiff has "never been disciplined in any way related to patient care services or [his] professional performance" and has "never had a malpractice lawsuit filed against [him]." Id. ¶ 11.

From 1997 to 2004, Plaintiff worked primarily in the UMC Quick Cares. Id. at ¶ 40. In 2004, Plaintiff was assigned to a position as a primary care physician at UMC's Lied Ambulatory Center ("Lied Center"). Id. at ¶ 39. In 2005, Plaintiff sought a transfer to a part-time position at a UMC Quick Care. (See Correspondence attached as Ex. B to Mot. for Summary Judgment (#113-2) dated 12/13/05). In this correspondence, Plaintiff requested a "transfer ASAP" to a Quick Care clinic as a "0.6 FTE."[2] Id. As part of the basis of his request, Plaintiff stated that because he was board certified in occupational medicine and not internal medicine, many of the patients assigned to him for treatment at the Lied Center were "outside [his] scope of training/practice." Id. Plaintiff further stated that "[t]his is not appropriate for the patients at the OPCs [outpatient clinics], and I am not comfortable providing care to many of the difficult internal medicine patients that I have been assigned." Id. Plaintiff acknowledged in the correspondence that he had previously been informed that UMC was no longer employing part-time positions (or 0.6 FTEs) in the Quick Care system. Id. However, he still requested the transfer. Id.

In response to Plaintiff's request to transfer, Larry Trilops ("Trilops") sent Plaintiff a memo indicating that UMC would "not be able to accommodate" his request. (See

---

[2] "FTE" stands for "Full Time Equivalent." (Mot. for Summary Judgment (#113) at 3). A 0.6 FTE is a part-time position. Id.

Memorandum attached as Ex. B to Mot. for Summary Judgment (#113-2) dated 12/19/2005). Trilops stated that Plaintiff's letter was correct that moving forward, UMC did not "wish to have anymore 0.6 FTEs" working in the UMC Quick Care facilities. Id. Trilops stated that there was currently only one 0.6 FTE position and that it would no longer exist once vacated. Id. Trilops further stated that Plaintiff was "welcome to apply for any vacant full-time or per diem position" in the Quick Cares should he "desire to be located at one of them." Id.

On January 6, 2006, Plaintiff sent an additional correspondence to Trilops in regard to his request to transfer to a part-time position at a UMC Quick Care and also in response to an issue that arose from Plaintiff's transfer of patients in the Lied Center. (See Correspondence attached as Ex. A to Mot. for Summary Judgment (#113-1) dated 1/6/06). In that letter, Plaintiff stated that he needed to be transferred from his position at the Lied Center. According to Plaintiff:

> I have never done a hepatology/GI/Cardiology/Pulmonology/Rheumatology training rotation, inpatient or outpatient. I am not an internist. My entire inpatient training in adult medicine was only 2 months. I've had few months of training in outpatient adult care, but those were the simple family practice patients, and did not include individuals with significant internal medicine problems. My prior stints in Primary Care, one at Fremont Medical Center and one at UMC/Valley View QC (yes, I have combined UC/PC simultaneously for a few years in the past) were on simple cases I selected, and not assigned cases like currently occurs at the OPC. I have never provided primary care to patients with CAD, MI, Liver/Kidney/Heart Failure, Cancer, Lupus, IDDM, Hyperthyroidism, F/U multi-severe trauma, Wheelchairs, home oxygen, COPD, anti-coagulation, etc. I took care of patients with NIDDM, WCCs, Routine GYN, HTN, anxiety/depression, and of course U/C problems. And unlike private practice, I cannot get consults in the OPC system in a timely fashion, making it even more inappropriate for me to attempt to take care of individuals with complicated internal medicine diagnoses. I do not believe that taking a refresher course for a couple of weeks or being assigned a proctor would rectify the lack of training/background. Finishing a primary-care residency would rectify the lack of background. If UMC wanted to pay me hourly at my current salary to finish the second and third years of a family practice residency, I will be more than happy to accept. If that is impossible (as one might imagine), then an assignment needs to be made consistent with my clinical training/background. This is a quality-of-care and ethical issue.

Id. Plaintiff further stated: "I've attempted since September 2005 till the present to cover the patients at the OPC clinic consistent with other physicians and, as previously stated, have discovered that I do not have the clinical background to allow such." Id. Finally, Plaintiff stated

that "I'm not interested in increasing from a 0.6 FTE to a 1.0 FTE [from part-time to full-time], given my current FMLA and PhD program status." Id. Based on the foregoing, Plaintiff again requested a transfer to a Quick Care part-time position. Id.

Trilops responded to Plaintiff's letter on January 17, 2006, expressing concern that Plaintiff did not feel he was qualified for his position and suspending Plaintiff pending an investigation of the matter. (See Letter attached as Ex. E to Mot. for Summary Judgment (#113-5) dated 1/17/06). In that letter, Trilops stated: "I received your letter dated January 6, 2006, indicating that you cannot perform the essential functions of your position. Therefore, I am left with no alternative but to suspend you pending investigation." Id. During the investigation, Trilops stated Plaintiff would be given the opportunity to discuss the issue in more detail. Id.

Plaintiff also sent a copy of his January 6, 2006 letter to Benjamin A. Hart, M.D. ("Hart"), the Medical Director of UMC. After reviewing Plaintiff's letter, Hart sent a memo to Trilops regarding its contents and expressed concern with continuing Plaintiff's employment in light of his self-confessed lack of training and background. (See Memo attached as Ex. F to Mot. for Summary Judgment (#113-6) dated 1/19/06). In his memo, Hart stated that he was "disturbed by what [he] read in that letter," and that Plaintiff's alleged lack of training caused him "great concern." Id. As a result, Hart stated that: "Dr. Walker by his own admission, should be precluded from taking care of patients in the Lied Adult Ambulatory Care Center because of his limited training as indicated above." Id.

Dr. Randy Shiraishi ("Shiraishi"), the Medical Director of UMC Quick Care Services also reviewed Plaintiff's letter. Shiraishi stated that "[a]fter a thorough review of the letter's contents I have very serious concerns regarding this individual's qualifications to continue as a physician within the UMC Ambulatory Care System." (See Memorandum attached as Ex. G to Mot. for Summary Judgment (#114) dated 1/19/06). Shiraishi stated that he would not recommend a transfer for Plaintiff to a UMC Quick Care because of "Dr. Walker's admitted incompetence." Id. According to Shiraishi: "[H]is request to be transferred to a position within the Quick Care/Urgent Care setting requires him to see ANY acute ill patient that enters the

urgent care center. These same acutely ill patients may have any number of illnesses that Dr. Walker feels that he is not capable of evaluating or treating. Intuitively, this is a high-risk situation for a physician that has great concerns about his clinical skills." Id. Thus, Shiraishi stated that he would "recommend that Dr. Walker not be allowed to transfer to the UMC Quick Care system for the reasons that he poses a great risk to those patients that he may care for and likewise, for the attendant liability to the parent institution." Id.

On January 30, 2006, UMC sent Plaintiff a letter regarding his suspension. According to that letter: "After consideration by UMC, including its Medical Directors and Chief of Staff, of your January 6, 2006 correspondence and the comments you made during the subsequent January 23, 2006 meeting, UMC is left with no alternative but to suspend you pending termination." (See Letter attached as Ex. Q to Mot. for Summary Judgment (#118-2) dated 1/30/2006). Further, the letter stated:

> You have disclosed that you have limited inpatient and outpatient training and requested that UMC transfer you to a number of alternative positions. However, based upon the review of your disclosures and your suggested alternative positions, it appears that you do not meet the qualifications for any of those positions, or, in fact, any position currently available. It was the consensus that you provided no evidence to convince those present at the January 23, 2006 meeting that you could perform the essential functions of either a primary care or urgent care physician.

Id.

In response, Plaintiff sent a letter to Trilops and Doug Spring at UMC's Human Resources Department seeking to arrange an internal hearing process regarding his suspension pending termination. (See Letter attached as Ex. R to Mot. for Summary Judgment (#118-3) dated 1/30/06). In that letter, Plaintiff stated that his termination was unjustified for several reasons. According to Plaintiff it was unjustified because he had worked for over nine years without any quality-of-care issues in the UMC Quick Cares. Id. In addition, Plaintiff stated that other Quick Care physicians had "far more limited" clinical scope-of-practice than Plaintiff. Id. Finally, Plaintiff asserted that his termination was in "retaliation for service as a Union Seward, recent testimony in an EEOC lawsuit by Dr. Khani, and an FMLA claim." Id.

As noted in the foregoing, following his termination, Plaintiff filed the present lawsuit against UMC alleging wrongful termination. In the Amended Complaint, Plaintiff alleges causes of action for violation of FMLA, Title VII, the First Amendment, and various state laws. Plaintiff's FMLA claim relates to leave he requested in 2005 in order to take care of his mother who was seriously ill at the time. (Am. Compl. (#20) at ¶ 18). According to Plaintiff, he was "unlawfully terminated from his employment with Defendants because of his taking leave under the FMLA and exercising his right to leave under the FMLA in violation of 29 U.S.C. sec. 2601, et seq." Id. at ¶ 46. Plaintiff also asserted that he was wrongfully terminated in violation of Title VII. According to Plaintiff, his termination was based on retaliation after Plaintiff testified as a witness in a Title VII lawsuit involving another UMC physician. Id. at ¶ 60. In addition, Plaintiff filed a cause of action for violation of his First Amendment rights relating to a series of newspaper articles he was quoted in from 1998-2003. Id. at ¶ 68. Finally, Plaintiff filed causes of action for wrongful termination in violation of Nevada's whistleblowing statute and for refusing to engage in illegal/unethical conduct. Id. at ¶¶ 74, 77.

Defendant has moved for summary judgment on the foregoing causes of action. Defendant argues that Plaintiff has provided no evidence that the decision to terminate him was based on any illegal or retaliatory motive. Rather, Defendant states that the sole reason for Plaintiff's termination was Plaintiff's January 6, 2006 letter in which Plaintiff stated that he was not qualified to continue in his position at the Lied Center.

## DISCUSSION

### I. Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party,

and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## II. Retaliation and Wrongful Termination under Title VII

As noted in the foregoing, Plaintiff asserts that his termination was in violation of Title VII of the Civil Rights Act of 1964. According to Plaintiff, he engaged in a protected activity under that statute when he testified in a Title VII lawsuit involving another physician at UMC in 2005. Plaintiff states that his termination was based on this testimony and thus constitutes retaliation in violation of Title VII.

On November 3, 2005, Plaintiff was called as a witness by Dr. R. Mohammadkhani in a case against UMC. (Walker Declr. (#127-2) at ¶ 57). According to Plaintiff, Dr. R. Mohammadkhani was a physician and employee at UMC who brought a lawsuit against UMC for harassment and retaliation under Title VII of the Civil Rights Act of 1964. Id.

Plaintiff states that his testimony in that case was detrimental and damaging to UMC.[3] Id. at ¶ 64.

Defendant moves for summary judgment on this claim on the grounds that Plaintiff has not provided any evidence that there is a "causal link" between Plaintiff's testimony in Dr. R. Mohammadkhani's case and his termination in 2006. (Mot. for Summary Judgment (#113) at 12). According to Defendant, the only evidence presented clearly establishes that the sole reason for Plaintiff's termination was the content of Plaintiff's January 6, 2006 letter in which he stated that he was not sufficiently trained and did not have the proper background to continue in his position at the Lied Center at UMC. Defendant notes that numerous other UMC employees testified against UMC in the Dr. R. Mohammadkhani case and were not terminated for their involvement in the matter. In addition, Defendant states that Plaintiff initially testified in that case in 2003 during his deposition - yet he was not terminated until 2006. Finally, Defendant notes that Plaintiff's Opposition expressly argues that UMC's termination decision was wrongful because it was based "on *nothing* except Plaintiff's January 6, 2006 letter," (see Opp'n (#127-1) at 2)(emphasis added), thus conceding that his termination did not relate to any retaliatory motive under Title VII.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). If a prima facie case of retaliation is established and the employer articulates some legitimate non-retaliatory reason for the challenged action, the plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

---

[3] Specifically, Plaintiff states that he testified in his position as a union representative that he witnessed the defendant (a physician at UMC) abuse his authority as Dr. Mohammadkhani's supervisor by threatening her with discipline for trivial matters. Id. at ¶ 58. Plaintiff also testified that the defendant tried to limit the number of hours doctors could work at his clinic which affected Dr. Mohammadkhani, and that the defendant had been soliciting complaints against Dr. Mohammadkhani. Id. at ¶¶ 59-60.

8

In this case, the parties concede, for purposes of summary judgment, that Plaintiff engaged in a protected activity when he testified in the Dr. R. Mohammadkhani case and that he suffered an adverse employment decision when he was terminated from employment. However, Defendant argues that Plaintiff has provided no evidence that there is a causal link between Plaintiff's testimony and his termination. Rather, Defendant states that the evidence provided clearly establishes that UMC had a legitimate reason for terminating Plaintiff after Plaintiff submitted the January 6, 2006 letter. In response, Plaintiff asserts that the January 6, 2006 letter did not provide UMC an "honest, in good faith or reasonable belief for terminating Plaintiff." (Opp'n (#127-1) at 1). Rather, Plaintiff argues that the January 6, 2006 letter "gave Trilops the opportunity to misconstrue the letter in the way he saw fit to be able to terminate Walker." Id. at 2.

To establish causation in a retaliation case, a plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and but for such activity [he] would not have been fired." Villiarimo, 281 F.3d at 1064. The Ninth Circuit has recognized that in some cases, "causation can be inferred from timing alone where an adverse employment action follows on the heals of protected activity." Villiarmo, 281 F.3d at 1065; see also Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000)(noting that causation can be inferred from timing). "But timing alone will not show causation in all cases; rather in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." Id. (internal citations and quotations omitted). In Villiarimo, the Ninth Circuit held that a "[a] nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself to give rise to an inference of causation." 281 F.3d at 1065.

In this matter, based on the evidence presented and the temporal proximity between Plaintiff's testimony in the Dr. R. Mohammadkhani case and his termination, the Court finds that a question of fact exists sufficient to survive summary judgment on this claim. Plaintiff testified at the trial in the Mohammadkhani case in November 2005. He was terminated

9

from his employment approximately two months later. Based on the timing of the events in this matter, the Court finds causation can be inferred and that summary judgment is not appropriate on Plaintiff's Title VII claim retaliation claim.

### III. Violation of First Amendment Rights

Plaintiff also asserted a cause of action for violation of his First Amendment rights because Plaintiff claims he was terminated based on comments he made in newspaper articles regarding billing and referral problems at UMC between 1998 and 2004. (Am. Compl. (#20) at 22-26).

Defendant moves for summary judgment on this claim on the grounds that Plaintiff has provided no evidence that any of the newspaper articles or press appearances by Plaintiff were considered in connection with the decision that Plaintiff not be retained on staff. Id. Moreover, the personnel that made the decision to suspend and terminate Plaintiff testified that their decision was not based on the comments Plaintiff made to the press. Id. Finally, Defendant argues that the timing of the articles in relation to his termination, as well as their content, fail to provide any inference that they led to Plaintiff's termination. In this regard, the articles were published over two-years before Plaintiff's termination. In addition, UMC agreed with many of the problems discussed by Plaintiff in the articles. Id.

To prevail on a claim for violation of a plaintiff's First Amendment rights, a plaintiff is required to prove that: (1) he engaged in protected activity; (2) the defendant took an adverse employment action; and (3) his protected activity was a "substantial or motivating factor" for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). In order to demonstrate that there is a genuine issue of material fact on whether protected activity was a substantial or motivating factor behind the plaintiff's dismissal, the plaintiff "is required to present evidence" that: (1) there was "a very close proximity in time" between the protected activity and the dismissal, such that a jury could infer that the plaintiff was discharged in retaliation for the activity; (2) plaintiff's employer expressed opposition to his actions, either to him or to others; or (3) plaintiff's employer's

10

proffered explanation for the discharge was false and pre-textual. Keyser v. Sacramento City Unif. Sch. Dist., 265 F.3d 741, 751-52 (9th Cir. 2001); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Here, Defendant argues that they are entitled to summary judgment on this claim because Plaintiff did not engage in a protected activity and Plaintiff cannot show that any alleged protected activity was the substantial or motivating factor for his termination.

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public concern.'" Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). In order to state a First Amendment retaliation claim, a plaintiff must show that "the speech addressed an issue of public concern." Id. (citing Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Id. (quoting Johnson v. Multnomah County, Or., 48 F.3d 420, 422 (9th Cir. 1995)). Speech that deals with "individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." Id. (internal citations and quotations omitted). "If the speech in question does not address a matter of public concern, then the speech is unprotected." Id.

Here, the newspaper articles and press interviews given by Plaintiff constitute matters of public concern. These articles refer to billing and referral problems that existed at UMC and potentially impacted medical care at that facility.[4] As such, the speech in

---

[4] For instance, one article discussed whether the county hospital's method of sending patients to see specialists was backlogged. (See Articles attached as Ex. L to Mot. for Summary Judgment (#116)). Other articles discussed whether the policy of "treat first, pay later," at UMC was costing UMC money. Id. Another article claimed that a change in billing at UMC could save UMC millions of dollars. Id.

these articles relates to matters of social or other concerns to the community.[5]

Although the Court finds that the speech at issue involved a matter of public concern, the Court finds that Plaintiff's First Amendment claim fails because he has failed to show that his speech was a substantial and motivating factor in his termination. See Eng, 552 F.3d at 1071. As noted in the foregoing, in order to satisfy this prong, Plaintiff must show: (1) there was a *very close proximity* in time between protected activity and the dismissal, such that a jury could infer that the plaintiff was discharged in retaliation for the activity; (2) plaintiff's employer expressed opposition to his actions, either to him or to others; or (3) plaintiff's employer's proffered explanation for the discharge was false and pre-textual. Keyser, 265 F.3d at 751-52.

Here, there is no close proximity in time between the alleged protected activity and Plaintiff's dismissal. The newspaper articles and press interviews all occurred between 1998 and 2004 and the bulk of them were published in 2003. Thus, over two years passed from the time Plaintiff engaged in this speech until he was terminated. This amount of time is not sufficient for Plaintiff to establish "a very close proximity in time" between the protected activity and the dismissal such that a jury could infer that Plaintiff was discharged in retaliation for the activity. Moreover, Plaintiff's employer never expressed any opposition to his actions, either to Plaintiff or to others. Trilops specifically testified that his decision was not based on any newspaper articles or press interviews relating to Plaintiff. (See Trilops Dep. attached as Ex. S to Mot. for Summary Judgment at 140-141). In fact, the majority of the articles were written before Trilops was even employed at UMC. Id. Ellerton, the Chief of Staff, also testified that he was not even aware of the articles and press interviews involving Plaintiff. (See Ellerton Dep. attached as Ex. S to Mot. for Summary Judgment (#120-1) at 45).

---

[5] In his opposition, Plaintiff also argues that his January 6, 2006 letter is protected under the First Amendment. (Opp'n (#127-1) at 6). However, this letter does not address an issue of public concern. In this regard, it deals explicitly with Plaintiff's "individual personnel dispute and grievances," and has "no relevance to the public's evaluation of the performance" of a government agency. See Eng, 552 F.3d at 1070.

Based on the foregoing, Plaintiff has failed to provide any evidence to support a cause of action for violation of his First Amendment rights. Thus, the Court grants Defendant's motion for summary judgment on this claim.

## IV. Violation and Retaliation under FMLA

Plaintiff has also asserted a cause of action for violation and retaliation under the FMLA. According to Plaintiff, Plaintiff "was unlawfully terminated from his employment with Defendants because of his taking leave under the FMLA and exercising his right to leave under the FMLA." (Am. Compl. (#20) at 18). Plaintiff also asserts that Defendant "engaged in a series of actions and conduct to make [Plaintiff's] job more difficult creating a hostile work environment after [Plaintiff] applied for and commenced intermittent leave under the FMLA." Id. at 19.

Defendant moves for summary judgment on Plaintiff's FMLA claims on the grounds that the evidence shows that the decision to terminate Plaintiff was based on Plaintiff's January 6, 2006 letter and not because Plaintiff exercised his rights under the FMLA. (Mot. for Summary Judgment (#113) at 8). Defendant states that it is undisputed that Plaintiff requested FMLA leave in February 2005 and was granted this request to take care of his critically-ill mother. Id. Further, Defendant states that Plaintiff testified, under oath, that he was never denied a requested full day off under FMLA. Id. In addition, Defendant states that UMC never interfered with Plaintiff's FMLA requests. Id. at 19. Rather, Defendant states that Plaintiff's attempts to make "last minute changes" to his FMLA leave days caused disruptions with the clinic schedule because it required patients and staff to be rescheduled.[6] Id.

Plaintiff argues that summary judgment is not appropriate on this claim because "it is clear Plaintiff was constantly being interfered with and harassed about using his FMLA leave." (Opp'n (#127-1) at 8). In this regard, Plaintiff states that he was required to use

---

[6] In this regard, Defendant notes that Plaintiff would request an FMLA leave day from his schedule at the Lied Center and then request to make up the hours at a different clinic or a Quick Care. (Reply (#129) at 12). Plaintiff was informed that he could not make up FMLA leave days at different locations after he had taken leave from his normal schedule. Id.

vacation time when he missed one of his Lied Center shifts. Id. Plaintiff states that he should have been allowed to make up the shift by working a Quick Care shift and not have his vacation charged. Id. According to Plaintiff, "[t]his effected how Plaintiff took his FMLA and how much of [his] FMLA he was forced to use." Id.

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for family members who are ill, or to care for new babies." Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1119 (9th Cir. 2001)(citing 29 U.S.C. § 2612). Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. 29 U.S.C. § 2615(a)(1). Congress has authorized the Department of Labor ("DOL") to issue implementing regulations for the FMLA. 29 U.S.C. § 2654. These regulations are entitled to deference. Bachelder, 259 F.3d at 1123, n.9. DOL regulations state that "[t]he FMLA prohibits interference with an employee's rights under the law." 29 C.F.R. § 825.220(a). Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b). The DOL interprets "interference" to include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." Id.; see Xin Liu v. Amway Corp., 347 F.3d 1125, 1133 (9th Cir. 2003).

Here, summary judgment is not appropriate on Plaintiff's FMLA claim because there is a question of fact whether Defendant interfered with Plaintiff's right to take FMLA. In this matter, although Plaintiff concedes that he was never denied an FMLA leave request, he has raised a question of fact as to whether UMC interfered with his right to take FMLA. (See Deposition of Bradley S. Walker, M.D. attached as Ex. R to Mot. for Summary Judgment (#119) at 303). In this regard, Plaintiff provided evidence that he was informed by UMC that he was requesting FMLA in a manner that was "interrupting clinic operations." (See Walker Dep. attached as Ex. R to Mot. for Summary Judgment (#119) at 287). Plaintiff received a memo from the Medical Director at UMC, Hart, regarding Plaintiff making changes to his FMLA schedule. In that memo, Hart states that Plaintiff was

scheduled to be off on Monday, September 12, 2005 for FMLA. (See Memo attached as Ex. N to Mot. for Summary Judgment (#118) dated 9/12/05). Hart states that Plaintiff was initially scheduled to work that day, "however on August 23, 2005 you submitted a Leave Request" asking for FMLA leave on that day. Id. Plaintiff's leave request was granted and his "fully booked clinic cancelled and those patients rescheduled." Id. On September 8, 2005, Plaintiff generated another request asking to work again on Monday, September 12, 2005. Id. Hart denied Plaintiff's request to work that day after he had previously requested FMLA leave on that day. According to Hart, Plaintiff's records were "developing a trending pattern of changing his established schedule" based on Plaintiff's last minute leave changes. Id. Hart informed Plaintiff that "[t]his trend interrupts not only the work flow of the clinic and staffing requirements, but patients are inconvenienced by having to be re-scheduled multiple times." Id.

Although the fact that Plaintiff received a memo regarding problems with his "last minute" leave request changes does not constitute a violation of the FMLA per se, it does raise a question of fact sufficient to survive summary judgment on the issue of whether his FMLA rights were interfered with. In addition, there is a temporal proximity between Plaintiff's FMLA leave requests and his termination sufficient to infer causation on that claim.

Thus, based on the foregoing, the Court denies Defendant's motion for summary judgment on this claim.

## V. State Law Claims

Plaintiff has also asserted various state law claims including alleged wrongful termination in violation of state law whistleblowing and wrongful termination for refusing to engage in illegal/unethical conduct. (Am. Compl. (#20) at 26-27). The Court grants summary judgment to Defendant on these claims. Plaintiff's allegations that his termination violated Nevada law is unsupported by the evidence and based on conclusory allegations.

///

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (#113) is GRANTED IN PART and DENIED IN PART. Defendant's motion is GRANTED as to Plaintiff's First Amendment claim and state law claims. Defendant's motion is DENIED as to Plaintiff's Title VII and FMLA claims.

IT IS FURTHER ORDERED that Defendant's Emergency Motion to Extent Time (#128) is GRANTED.

DATED: December 27, 2010

_____
United States District Judge